ISAÍ VEGA TORRES y VEGA HERMANOS, INC., demandantes y recurridos, *v.* SUCN. DE MARIO MERCADO RIERA, compuesta por EILEEN y ADRIANA MERCADO PARRA; EILEEN y DAVID COFFEY MERCADO; y MARGARITA, MARÍA LUISA y RICHARD WILSON MERCADO, demandados y peticionarios.

*Número:* O-78-124     *Resuelto:* 30 de mayo de 1978

*O'Neill & Borges* y *Raúl E. González Díaz,* abogados de los peticionarios; *William Feliciano Ruiz,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

En el año 1957, Mario Mercado Riera, causante de los peticionarios, arrendó al codemandante recurrido, Isaí Vega Torres un local comercial situado en un edificio de la calle Atocha, número 74, Ponce, Puerto Rico. Este estableció una tienda dedicada al expendio de ropa de caballeros y niños, conocida originalmente con el nombre de *Vega Hermanos* y posteriormente como *Tienda Greisac.*(¹) Durante el trans-

---

(¹) Para el año 1964 fue incorporada la entidad Vega Hermanos, Inc., quien operó la tienda y en ocasiones satisfizo los cánones de arrendamiento. Ello es la razón aparente para figurar como codemandante.

curso de los años, Vega realizó mejoras, tanto en mobiliario, como interiores y fachada principal, por valor aproximado de $100,000.00. El 21 de marzo de 1975 ocurrió un incendio que afectó, entre otros, el uso de dicho local e imposibilitó totalmente las operaciones en la tienda. Vega gestionó la continuación del arrendamiento expresando su intención de reparar a su costo el edificio, pero los peticionarios se negaron bajo la hipótesis de que el contrato terminó con el fuego. Subsiguientemente lo arrendaron a un tercero. Ante tal situación, Vega y Vega Hermanos, Inc., presentaron demanda solicitando decreto judicial declarando la vigencia del arrendamiento, y en la alternativa, daños por más de $475,000.00. La demanda fue contestada y se formuló una reconvención. Posteriormente los demandados peticionarios solicitaron su desestimación mediante sentencia sumaria bajo la tesis de que la destrucción del local finalizó la relación arrendaticia. Hubo oposición, y el tribunal de instancia, en virtud de los documentos y declaraciones juradas presentadas por las partes declaró dicha solicitud sin lugar. A petición de los demandados expedimos orden dirigida a los demandantes para que comparecieran a mostrar causa por la cual no deberíamos revocar dicho dictamen y a la par desestimar la acción.

La argumentación de errores ante nos gira esencialmente en torno a dos extremos: (²) (1) determinación fáctica sobre el carácter y extensión del siniestro; y (2) consecuencias jurídicas del mismo sobre la continuidad o no del arrendamiento.

## I

*Determinación Fáctica sobre el Carácter y Extensión del Siniestro.*

No existe duda de la ocurrencia del fuego y de que el

---

(²) Los peticionarios apuntan y discuten nueve (9) errores tanto de tipo procesal como de derecho sustantivo. En vista de nuestra decisión, no consideramos necesario pronunciarnos sobre todos ellos.

mismo afectó la Tienda Greisac. Sobre el particular el tribunal de origen determinó que:

". . . el local objeto de este litigio *no se destruyó y que era reparable* por los siguientes fundamentos:

a—En la vista del día 3 de noviembre de 1977, la parte demandante presentó como perito al Arquitecto, Virgilio Monsanto Díaz, para demostrar que el edificio no se destruyó y que era reparable. Se le concedió un término de 20 días para someter su dictamen pericial. Igual término se autorizó a la parte demandada para presentar un informe pericial, pero no lo hizo.

El Tribunal toma conocimiento judicial de las cualificaciones periciales del arquitecto Monsanto Díaz, dándole credibilidad a su informe del día 21 de noviembre de 1977 y del mismo se desprende que el *edificio se destruyó parcialmente y que era reparable.*

b—El informe del Departamento de Bomberos, Exhibit C, parte demandada, que indica que el edificio tenía un valor de $100,000.00 y que sufrió pérdidas por la suma de $40,000.00.

c—Fotografías presentadas por la parte demandante, que indican que la fachada quedó intacta con las vitrinas y el rótulo de Greisac, Exhibit D, parte demandante.

d—El hecho de que la compañía aseguradora únicamente pagó la suma de $19,200.00 en la pérdida del edificio por concepto del fuego, en una propiedad valorada en la suma aproximada de $100,000.00, Exhibit A, parte demandada.

9. La tienda, o sea la mercancía y equipo dentro de la misma, fueron pérdida total." (Bastardillas nuestras.)

■ Estando basadas las anteriores determinaciones de hecho en prueba documental, este Tribunal se encuentra en igual posición que la del foro primario para apreciar y evaluar directamente los mismos. *Planned Credit of P.R., Inc.* v. *Page,* 103 D.P.R. 245, 261–262 (1975). A la luz de dicha prueba, concluimos que se cometió manifiesto error. Examinemos separadamente los elementos de prueba antes mencionados.

(a) Informe del Arquitecto Monsanto Díaz. En lo pertinente dicho perito consigna:

"1. Que el fuego ocurrido *consumió el interior del contenido* dentro del perímetro de la edificación *incluyendo el techo de la misma.*

2. Que se mantuvo en *pie* y *utilizable* las paredes exteriores que comprenden dicho perímetro de la edificación incluyendo las vitrinas existentes que dan frente a la Calle Atocha de Ponce.

3. Que los daños causados a estas estructuras en pie *eran reparables y reconstrucción de la estructura* total viable mediante la instalación de un *nuevo techo* y el *resanado del resto de la estructura.* Procedí a medir lo allí existente y preparé un plano a requerimiento del propio señor Isaí Vega a los fines de acondicionar la edificación a su estado original antes del fuego." (Bastardillas nuestras.)

Su lectura refleja que el fuego consumió todo el interior del local incluyendo el techo y que el remanente de la estructura quedó afectada y su reparación exigía que fueran resanadas, esto es, cubiertas. Advertimos que se trata de una reconstrucción sustancial que abarca, en adición a la instalación de un nuevo techo, el cubrir todas las paredes. En este sentido, queda cualificada la apreciación del tribunal de instancia de que "el edificio se destruyó parcialmente y que era reparable."

(b) Respecto al Informe del Departamento de Bomberos, es menester apuntar que no sólo demuestra que el cuarenta (40%) por ciento del edificio quedó averiado, sino que la tienda Greisac fue la que experimentó mayores pérdidas. De esta observación, unida al anterior informe de Monsanto Díaz, cabe razonablemente deducir que el local en controversia fue el más afectado.

(c) Con referencia a las fotografías de la fachada, las mismas demuestran que el frente de la tienda no sufrió daño mayor. Ello no vulnera la realidad de que todo el interior y techo quedaron destruidos.

(d) En torno al fundamento sobre el pago de $19,200.00 en una propiedad valorada en $100,000.00 es de rigor destacar que dicho monto fue satisfecho en virtud de una póliza cuyo máximo de cubierta era $20,000.00. Como elemento

de prueba tiende a demostrar el carácter sustancial del incendio pues representa un equivalente a noventa y seis (96%) por ciento del valor total asegurado de la propiedad.

(e) Y finalmente, la pérdida total del equipo y mercancía dentro de la tienda, tiende a corroborar que el siniestro concentró sus efectos destructivos en dicho local.

En adición a los ingredientes valorativos de prueba reseñados, debemos mencionar las siguientes apreciaciones del propio codemandante Vega, las cuales constituyen admisiones reveladoras de la magnitud e intensidad del incendio: Carta de 21 de abril de 1975 al Juez de Quiebra en la que afirma que ". . . el día 21 de marzo de 1975, nuestra Tienda principal en Atocha #74 de Ponce, *fue totalmente destruida por un gran incendio . . .*"; y carta del 17 de abril de 1975 dirigida a los arrendadores, que expresa: "'El día 21 de marzo de 1975, el mes pasado, nuestra Tienda Greisac que ocupaba un local vuestro en la Calle Atocha #74, fue totalmente destruido por un incendio . . .", y que ". . . el arrendamiento del local, (ahora del solar, ya que hay que *hacer reforma total* del edificio, *pues el techo de ladrillos, madera y zinc quedó prácticamente destruido . . . .*" (Bastardillas nuestras.)

Apreciada la prueba documental presentada por ambas partes en apoyo de sus respectivas contenciones, queda seriamente cuestionada y condicionada la validez de la aseveración medular del tribunal a quo de que el local no se destruyó y era reparable. Ciertamente hemos de reconocer la posibilidad en el campo de la ingeniería de que toda ruina o remanente de una estructura destruida como la de autos sea reparable a base de una inversión sustancial. Sin embargo, anotamos que en sus variadas acepciones la palabra "destruir"—del latín *destruere*—significa "deshacer, arruinar o asolar una cosa material." *Diccionario de la Lengua Española*, 467 (1970). En su correcta perspectiva, resolvemos que el análisis integral de la evidencia tiende a establecer preponderantemente el hecho incontrovertible de que el local "quedó prácticamente

destruido" y no apto para el uso destinado; el hacerlo utilizable equivalía a reconstruirlo casi en su totalidad.

## II

Aceptada la destrucción sustancial del local, resta considerar la certeza de la conclusión de derecho de ". . . que la cosa no se destruyó por el fuego y por lo tanto no se extinguió el contrato de arrendamiento."

[2]  En el capítulo referente a contrato de arrendamiento, entre las causas de su extinción nuestro Código Civil no hace mención expresa sobre la pérdida de la cosa arrendada. ¿Qué significado tiene? Advertimos que la única referencia sobre el particular se encuentra en el Art. 1458 que dispone: "[s]i se pierde la cosa arrendada o alguno de los contratantes falta al cumplimiento de lo estipulado, se observará respectivamente lo dispuesto en [los artículos 1136 y 1137 y en los 1054 y 1077] de este título." (31 L.P.R.A. sec. 4065.) Al examinar los Arts. 1136 y 1137 notamos que éstos abarcan el tópico relativo a la pérdida de la cosa debida como causa general de extinción de las obligaciones. (31 L.P.R.A. secs. 3191 y 3192.) Como acertadamente nos ilustra Castán, "[f]úndase este modo de extinción en que, suponiendo toda obligación un objeto, desde el momento que éste falta tiene que desaparecer el vínculo." 3 *Derecho Civil Español, Común y Foral*, págs. 360–361 (1974). Así queda contestada la interrogante; el Código Civil al omitir mencionar taxativamente la pérdida de la cosa arrendada como causa de extinción, simplemente evita repetir una premisa cardinal en materia de obligaciones recíprocas: desaparecida la cosa, expira la obligación. Esta interpretación queda reforzada al percatarnos de que el Art. 1458 antes transcrito implícitamente reconoce que la pérdida finaliza el arriendo, pues su texto simplemente parte del supuesto de que ante tal eventualidad cesa el arrendamiento, ocupándose entonces de señalar las variadas circunstancias en que el arrendatario será responsable por tal pérdida.

■ El examen de la doctrina española en sus artículos concordantes acepta unánimemente la anterior conclusión: la pérdida de la cosa extingue el contrato de arrendamiento y en consecuencia, coetáneamente también terminan las obligaciones respectivas entre el arrendador y el arrendatario. X 2 Manresa: *Comentarios al Código Civil Español,* págs. 235–237; XXIV, 1 Scaevola; *Código Civil,* págs. 590–594 (1952); IV Castán, *op. cit.,* pág. 303; III 2 Puig Peña: *Compendio de Derecho Civil Español,* pág. 725; III Valverde: *Tratado de Derecho Civil,* 476–477 (1937); III Espín, *Manual de Derecho Civil,* pág. 540.

■ Manresa informa: "Por lo demás, no puede ofrecer duda que la pérdida de la cosa extingue el contrato de arrendamiento . . . pues . . . el contrato no puede subsistir desde el momento en que le falta el objeto sobre que recaía." Y aclara que ". . . por pérdida de la cosa no solamente se entiende su destrucción material y completa, *sino aquel esencial cambio de estado que la haga inapta para el fin a que venía siendo destinada.*" *Op. cit.,* 238 (bastardillas nuestras). Tal es el caso de autos, en que el fuego afectó sustancialmente el local arrendado.

No existiendo controversia real entre las partes en cuanto al hecho básico en que descansa la demanda respecto a que el incendio del 21 de marzo de 1975 ocasionó la pérdida de la cosa arrendada, y que como consecuencia simultáneamente *de jure* se extinguió el contrato de arrendamiento prevaleciente entre las partes hasta ese momento, a tono con la Regla 36.3 de las de Procedimiento Civil vigentes *procedía sentencia sumaria a favor de los peticionarios y la desestimación de la demanda. Se dictará la correspondiente Sentencia.*

El Juez Presidente Señor Trías Monge no intervino. El Juez Asociado Señor Irizarry Yunqué se inhibió.